YELLOW FREIGHT SYSTEM, INC., Appellant,

v.

ACF INDUSTRIES, INC., Respondent.

No. 64779.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 21, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 28, 1994.

Application to Transfer Denied
Sept. 20, 1994.

---

Russell W. Baker, Jr., James H. Andreasen and Samuel P. Logan, Spencer Fane Britt & Browne, Kansas City, for appellant.

Katherine Butler, Frank L. Pellegrini, Julie A. Emmerich, Luther & Butler, P.C., St. Louis, for respondent.

KAROHL, Judge.

This case comes to us following dismissal of Yellow Freight System, Inc.'s petition seeking declaratory relief against ACF Industries, Inc. The trial court found that the Missouri statute relating to the cleanup of hazardous substances which create a public or environmental emergency, §§ 260.500 through 260.550 RSMo 1986, (hereinafter referred to as the Missouri Hazardous Substance Emergency Statute) does not create a private cause of action. We affirm.

Yellow Freight purchased 48 acres of real estate located at 2800 DeKalb Street in St. Louis, Missouri from ACF on April 23, 1985. Yellow Freight alleges it has expended and will expend in excess of $1,300,000 to address environmental problems that ACF created at the site. Yellow Freight filed a lawsuit against ACF in connection with these environmental problems in the United States District Court for the Eastern District of Missouri, case number 4:92CV002585, on December 29, 1992. The federal lawsuit involves the same parties and subject matter as the present dispute, but seeks money damages and declaratory relief under two federal statutes, 42 U.S.C. § 9601 *et seq.* and 42 U.S.C. § 6972, and state common law theories of strict liability and indemnity or contribution. The Missouri statute that is the subject of this action is not mentioned in the presently pending federal lawsuit.

Yellow Freight filed its petition for declaratory judgment in the City of St. Louis Circuit Court on December 24, 1992. It seeks a declaration that ACF is a "person having control over a hazardous substance" and liable to Yellow Freight for "cleanup costs" associated with a "hazardous substance emergency" pursuant to § 260.530.1 RSMo 1986. ACF moved to dismiss the petition, alleging, among other things, Yellow Freight failed to state a claim upon which relief could be granted. The trial court sustained the motion because it found no private right of action under the Missouri Hazardous Substance Emergency Statute, and it expressly did not reach the facts.

Chapter 260 of the Missouri Revised Statutes, entitled Environmental Control, contains a number of subdivisions. One is "Abandoned or Uncontrolled Sites," §§ 260.435–260.550. Generally, these sections vest the State of Missouri with authority to regulate and control the disposal and cleanup of hazardous substances. In particular, §§ 260.500 to 260.550 contain provisions defining a hazardous substance emergency and requiring the director of the department of natural resources to develop a response plan to such emergencies. The sections provide the director with the tools necessary to implement the plan. Section 260.530 describes liability for cleanup costs when the State of Missouri takes on the responsibility for cleaning up hazardous substances. This sec-

tion permits, in certain circumstances, the State of Missouri to recover cleanup costs from persons "having control over a hazardous substance."

Yellow Freight argues the legislature also intended that parties like Yellow Freight could pursue a claim under the Missouri Hazardous Substance Emergency Statute against parties like ACF for cleanup costs incurred in remedying "hazardous substance emergencies" in cooperation with the department of natural resources. The parties agree the legislature did not expressly provide for a private cause of action. The relevant provisions of the Missouri statute are as follows:

**260.530. Cleanup costs, liability—failure to comply, damages, exceptions—records of expense to be kept**

1. Any person having control over a hazardous substance shall be strictly liable to the state of Missouri for the reasonable cleanup costs incurred by the state as a result of the failure of such person to clean up a hazardous substance involved in a hazardous substance emergency in accordance with the requirements of sections 260.500 to 260.550 and rules promulgated by the department pursuant thereto. If such failure is willful, the person shall, in addition, be liable for punitive damages not to exceed triple the cleanup costs incurred by the state. Prompt and good faith notification to the director by the person having control over a hazardous substance that such person does not have the resources or managerial capability to begin or continue cleanup activities, or a good faith effort to clean up, relieves the person of liability for punitive damages, but not for actual cleanup costs. The director shall keep a record of all expenses incurred in carrying out any project or activity authorized by sections 260.500 to 260.550.

2. A person otherwise liable under the provisions of sections 260.500 to 260.550 is not liable if he demonstrates that the hazardous substance emergency occurred as the result of an act of God, an act of war, an act of the state of Missouri or the United States or solely the act of a third party. For the purposes of sections 260.500 to 260.550, no employee, agent of, or independent contractor employed by a person otherwise liable shall be considered a third party.

**260.500.** (2) "Cleanup costs", all costs incurred by the state or any of its political subdivisions, or their agents, or by any other person participating with the approval of the department of natural resources in the prevention or mitigation of damages from a hazardous substance emergency or the cleanup of a hazardous substance involved in a hazardous substance emergency.

Yellow Freight presents several reasons to support its theory the legislature intended to create a private right of action. First, Yellow Freight attaches great significance to the following phrase in the definition of cleanup costs: "all costs incurred by the state . . . or by *any other person* participating with the approval of the department of natural resources." (Our emphasis). We do not interpret this definition of reimbursable costs to demonstrate legislative intent to establish a private right of action. This language merely defines a broader spectrum of costs *recoverable by the state* than those costs incurred by state employees. In other words, the state may recover for expenses when it determines there is a need to hire contractors with specialized skills or equipment, and the person in control of the hazardous waste site is still liable. Where the language of a statute is clear and unambiguous, we lack the authority to change the meaning through construction. *Jones v. Director of Revenue*, 832 S.W.2d 516, 517 (Mo. banc 1992). The statutory language defining "recovery costs" cited by Yellow Freight does not create an ambiguity concerning who may bring an action.

Yellow Freight's next argument is the statutory definition of "person having control over a hazardous substance" evidences the legislature's intent to allow a party such as Yellow Freight to recover its cleanup costs from other persons responsible for creating a hazardous substance emergency, such as ACF. The definition is as follows:

260.500. (8) "Person having control over a hazardous substance", any person producing, handling, storing, transporting, refining, or disposing of a hazardous substance when a hazardous substance emergency occurs, including bailees, carriers, and any other person in control of a hazardous substance when a hazardous substance emergency occurs, whether they own the hazardous substance or are operating under a lease, contract, or other agreement with the legal owner thereof.

ACF may in fact be a "person having control over a hazardous substance" within the meaning of the Missouri statute because its actions produced or it handled the hazardous substance. Yellow Freight also falls within the definition. However, the statute only allows the State of Missouri to bring a cause of action against such persons. It provides that a "person having control over a hazardous substance *shall be strictly liable to the state of Missouri* for the reasonable cleanup costs ..." (Our emphasis) § 260.-530.1. Yellow Freight concludes the facts, viewed in the appropriate light, establish that a hazardous substance emergency exists on its property, that cleanup costs have been incurred, and, therefore, ACF is strictly liable to it for those costs. Even if true under some legal theory, the only party entitled to sue to recover cleanup costs it incurs under the statute, is the State of Missouri.

The second subsection of § 260.530 grants a defense against a claim brought by the state under defined conditions. It does not define a class of persons entitled to make a claim under the statute. Section 260.530.2 provides, in part, "[a] person otherwise liable under the provisions of sections 260.500 to 260.550 is not liable if he demonstrates that the hazardous substance emergency occurred as the result of ... solely the act of a third party." This provision does not favor the construction sought by Yellow Freight. Instead, it would give Yellow Freight a defense to a claim brought by the state if the emergency were "solely the act of" ACF.

Yellow Freight also argues: (1) it is within the class of persons sought to be protected by the Missouri Hazardous Substance Emergency Statute; (2) a private right of action would promote the legislative purposes of the statute by encouraging prompt cleanup by non-liable persons who could then recover their costs from liable parties; and, (3) allowing a private right of action would be consistent with the legislative scheme of the statute because it would promote the effectiveness and supplement limited state resources in enforcing the statute. *See* Restatement (Second) of Torts § 874A.

There is no indication in the statute that owners of property with hazardous substances are an intended class of persons for whose protection the statute was enacted. The statute protects the public at large. Yellow Freight's membership in that category is not sufficient to place it within the class for whose "especial benefit" the statute was enacted. *See State v. Kansas City Firefighters Local No. 42,* 672 S.W.2d 99, 110 (Mo.App. 1984). Unlike other states, Missouri did not provide protection for a grantee of real estate after a change in ownership of lands containing hazardous substances, nor did it expressly support private remedies. *See e.g., Cooper Dev. Co., Inc. v. First Nat'l Bank of Boston,* 762 F.Supp. 1145 (D.N.J.1991) and *People v. Fiorini,* 192 Ill.App.3d 396, 139 Ill.Dec. 344, 548 N.E.2d 729 (Ill.App.3d 1989). For example, the New Jersey Environmental Cleanup and Responsibility Act, N.J.Rev. Stat. § 13:1K–1 *et seq.* included a provision whereby the transferee of an industrial establishment may void a transaction and recover damages from a transferor who failed to comply with the environmental regulations. *Cooper Dev. Co., Inc. v. First Nat'l Bank of Boston,* 762 F.Supp. 1145 (D.N.J. 1991).

We accept Yellow Freight's contention that a private right of action would promote the legislative purposes of the statute. It may encourage prompt cleanup by non-liable persons who could then recover their costs from liable parties, and perhaps it would save the state enforcement funds. However, these factors alone are not sufficient to infer a private right of action under a statute where other legal remedies existed at the time of enactment. The absence of an implied cause of action does not foreclose other remedies for Yellow Freight against

ACF, some of which Yellow Freight is already pursuing in federal court. Furthermore, "when the legislature has established other means of enforcement rather than by a private cause of action, the courts will not recognize a private civil action unless it appears to be a clear implication that the legislature intended to create a private cause of action." *R.L. Nichols Ins., Inc. v. Home Ins. Co.*, 865 S.W.2d 665, 666–667 (Mo. banc 1993) (citing *Shqeir v. Equifax, Inc.*, 636 S.W.2d 944, 948 (Mo. banc 1982)). The means of enforcement provided by the statute is expressly the strict liability of any person having control over a hazardous substance to the State of Missouri for the reasonable cleanup costs.

We affirm the judgment of the trial court dismissing Yellow Freight's petition for declaratory judgment.

CRANE, P.J., and CRAHAN, J., concur.