Benjamin R. BURCH (Plaintiff), Respondent,

v.

UNION LIFE INSURANCE COMPANY (Defendant), Appellant.

No. 22856.

Kansas City Court of Appeals.
Missouri.
Jan. 12, 1959.

Poague, Poague & Brock, Clinton, for appellant.

Kelso Journey, Clinton, for respondent.

CAVE, Justice.

Plaintiff sued the defendant for damages for breach of two contracts. Trial to a jury resulted in a verdict and judgment for plaintiff in the amount of $1,720. Defendant perfected its appeal.

In the summer of 1953, the parties entered into two insurance agency contracts; one pertaining to the sale of life insurance, and the other to the sale of hospital and

medical insurance. These contracts provided that the plaintiff should be paid certain commissions or fees based on the premiums to be paid, on policies written by him. The policies were of an industrial type and were usually sold by the agent calling on customers from door to door. Some of the premiums were payable monthly, others quarterly, semi-annually or annually; were to be collected by the agent; and, after deducting his commission, the balance was remitted to the company. His commission became due upon the payment of a premium.

Plaintiff lived in Kansas City at the time of the execution of the contracts and sold a number of policies in that city. In 1955, with the approval of the defendant, plaintiff moved to Lowry City, Missouri, and arranged to collect the premiums by mail on the policies he had sold in Kansas City. The purpose of moving to Lowry City was to open a new territory for this type of insurance. Mr. Lee, an executive of the defendant, was to come to Lowry City and work with the plaintiff on a program of advertising and arranging for other agents, and in general to assist in developing this new territory. There was considerable correspondence between the parties but Mr. Lee did not come. During the next two years, plaintiff wrote but one policy for defendant. In June, 1957, the defendant wrote the plaintiff that it was discontinuing the contracts as written, and for him not to collect any more premiums; that the defendant would do so; and that if he wished to continue to write policies for the defendant, it must be done upon a basis of greatly reduced commissions. It is admitted that the defendant repudiated the contracts and offered plaintiff new contracts. It is also conceded by the defendant that "both contracts appointed the plaintiff as agent for life, * * *".

The points raised on appeal relate to the alleged errors in giving plaintiff's Instructions Nos. 1 and 2, and the refusal to give defendant's Instructions 2 and 4. Other evidence will be discussed in connection with the consideration of these instructions.

Plaintiff's Instruction No. 1, in effect, required the jury to find that the contracts were executed; the terms thereof; that plaintiff had complied therewith; that the defendant had breached the same; that if all or any of the policies which the plaintiff had sold were in force at the time the defendant breached the contracts, *"then the court instructs you that the rights of plaintiff Burch became and were fixed from the date of such repudiation of said contract, * * * and your verdict should be for the plaintiff unless you further find that prior to the date of the alleged repudiation of said contracts plaintiff had abandoned said contracts * * * or that said contracts * * * had been terminated by the mutual consent of both parties thereto."* (Italics supplied.)

Defendant contends that the italicized clause in the above quotation is erroneous because it, in effect, advised the jury that whatever policies the plaintiff had written and were in force on the day the defendant breached the contracts, the plaintiff would be entitled to his commissions on such premiums for the remainder of his life; and that such theory would be erroneous because it did not take into account the possible future cancellation or lapse of some or all of the policies.

The defendant argues that the plaintiff was entitled to recover the commissions which had been earned up to the time of filing his petition, but was not entitled to recover anything beyond that date, because no commissions were due until the premiums were paid, either monthly or otherwise, and that he would be required to make claim for such future commissions as they fell due.

We think defendant misconstrues the quoted language. The instruction does not submit any element of damage. It does no more than direct a verdict for plaintiff if the jury finds the facts hypothesized to

be true, and that the defendant had breached the contracts. In other words, plaintiff's cause of action arose at the breach of the contracts. His right to recover for the breach was as of that date. What damages, if any, were recoverable, is a different issue, and was submitted by Instruction No. 2.

Defendant cites Puller v. Royal Casualty Co., 271 Mo. 369, 196 S.W. 755, and McGinnis v. Hardgrove, 163 Mo.App. 20, 145 S.W. 512. These cases are not discussing the question presented by the criticism leveled at Instruction No. 1. They may have some bearing on plaintiff's Instruction No. 2, and will be discussed in that connection.

It is our conclusion that the court did not err in giving plaintiff's Instruction No. 1.

■ The most serious question concerns plaintiff's Instruction No. 2, which reads: "The court instructs the jury that if * * you find the issues for the plaintiff * *, then it becomes your duty to allow such a sum in damages as you may find from the evidence will be fair and reasonable compensation for all damages, not to exceed $2,990, you may find from the evidence to have reasonably directly resulted to him and that may directly result to him in the future by reason of the breach of the contract(s) mentioned in evidence * * *".

Defendant contends the instruction is erroneous because there is no substantial evidence authorizing recovery of damages for future commissions or profits; and also that the instruction is so general that it gave the jury a roving commission to assess any damages it saw fit without any guide or specific limitations.

It is undisputed that at the date of the breach of the contracts, there were 44 policies outstanding which plaintiff had sold, and that the monthly premiums thereon amounted to $140.29; and that on this basis, plaintiff was entitled to $26.21 per month in commissions. It is also admitted that at the time plaintiff filed suit, the defendant owed him some commissions which had not been accounted for. It is also in evidence that at the time suit was filed, some of these policies had lapsed. But the plaintiff produced the two witnesses whose policies had lapsed and they testified that the reason they permitted the lapse was because they were dissatisfied with the manner in which the defendant handled the collection of the premiums after they had taken that right away from the plaintiff; and that it was not due to any fault or neglect of the plaintiff. The evidence is clear that the kind of policies issued by the defendant are such as are sold by an agent calling on prospective customers from door to door, and the agent collecting the premiums. In other words, it is a personalized type of insurance business. The evidence also establishes plaintiff's life expectancy at ten years.

Defendant argues that it is a well known fact, and that the evidence in this case shows, that insurance policies are permitted to lapse or are cancelled for various reasons; therefore, the fact that the plaintiff had established an income of $26.21 per month as commissions on outstanding policies at the time of breach is no evidence that that amount or any other amount would continue for any specific length of time; and would not support the submission of future damages.

■ Of course, damages that are entirely speculative cannot be allowed. But in Spears v. Taylor Brothers Churn & Mfg. Co., Mo.App., 279 S.W. 238, 240, where the issues were comparable to the instant case, the court said: "There must be some basis to estimate these damages (future), and the most reasonable method is to take the profits for a reasonable period preceding the breach of the contract and leave the defendant to show that such future profits would have been less than the profits made in the given period immediately preceding the breach". In Young v. Tilley, Mo.App., 190 S.W. 95, 96, the court said: "The mere fact that damages are based on profits or other elements, making same more or less

indefinite and speculative, is not a ground for denying same, and the tendency of the decisions is to allow such damage when same can be estimated with a reasonable degree of certainty." Hiatt Inv. Co. v. Buehler, 225 Mo.App. 151, 16 S.W.2d 219, 225, quoted with approval the general rule on this subject as follows: "The rule that damages which are uncertain or contingent cannot be recovered does not embrace an uncertainty as to the value of the benefit or gain to be derived from the performance of the contract, but an uncertainty or contingency as to whether such gain or benefit would be derived at all. It only applies to such damages as are not the certain result of the breach, and not to such as are the certain result, but uncertain in amount". See, also, Hawkinson v. Johnston, 8 Cir., 122 F.2d 724, 731, 137 A.L.R. 420, wherein the court quoted from a decision of the United States Supreme Court as follows: "Certainty in the fact of damage is essential. Certainty as to the amount goes no further than to require a basis for a reasoned conclusion. * * *."

In Thayer-Moore Brokerage Co. v. Campbell, 164 Mo.App. 8, 20–21, 147 S.W. 545, 550, it is said: "It is always incumbent upon the party who asserts he has been damaged to adduce proof of the elements of his damage, but the rule against the recovery of uncertain damages relates to uncertainty as to the cause rather than uncertainty as to the measure or extent. A person who commits a breach of his contract and thereby injures the other party is not permitted to escape liability because the amount of the damages he caused is uncertain and is not susceptible of accurate proof. In such cases the burden of the wronged party does not require him to prove that which is incapable of proof, but to prove all the facts and circumstances bearing on the subject of the extent of the damage, and the jury are invested with the function of making certain that which in its very nature is uncertain by reducing to a pecuniary value elements which of themselves carry no standard by which such value may be measured with certainty." (Citing many cases.)

We think these authorities support the submission of plaintiff's future damages. The amount might be uncertain, but the fact that he was damaged by the breach is certain.

■ However, defendant asserts that it had not refused and did not intend to refuse to pay plaintiff his commissions as they became due, and therefore, he had no right to sue for his total damages upon the breach of the contract, but should be required to wait until the defendant failed to pay commissions falling due at some time in the future. In support of this contention defendant cites Puller v. Royal Casualty Co., 271 Mo. 369, 196 S.W. 755. In that case, the plaintiff was employed for a fixed period and at a definite monthly salary, which contract was breached by the defendant. The court discussed the old common law rule of requiring the plaintiff to sue separately for each month's salary, but at page 762 of 196 S.W. the court said: "In order to remedy those evils, the courts, by degrees, evolved the rule permitting the employé to sue upon his unlawful discharge for the amount of wages he would have earned under the contract had he been permitted to fully perform it, and fixed the damages prima facie, at the amount provided for in the contract, and cast the burden upon the employer to show by evidence, if he could, that the former was not entitled to recover the full amount; * * *". That language is not inconsistent with plaintiff's right to sue for his full damages in the instant case.

■ We think plaintiff's contracts were what has been referred to by the courts as mutually executory contracts. The question when and for what damages a party may sue for the breach of such a contract was fully discussed by this court in Allen v. National Life & Accident Ins. Co., 228 Mo. App. 450, 67 S.W.2d 534. The general rule is there announced as follows: " * * * where the contract is mutually executory,

at least in part, and there are interdependent covenants to be simultaneously performed, a repudiation or renunciation of the contract, on the part of one, covering the entire performance, before the time of performance, *is such a breach as gives immediate right of action for the entire damages arising as the result of the breach; * * *".* (Italics supplied.) For other cases announcing this doctrine, see Leon v. Barnsdall Zinc Co., 309 Mo. 276, 274 S.W. 699, 703; Eddington v. Cockrell, Mo.App., 286 S.W. 405; Hawkinson v. Johnston, supra; 3 C.J.S. Agency § 292 page 227; 44 C.J.S. Insurance § 163 page 847.

 We conclude the evidence was sufficient to submit the issue of future damages. We are also of the opinion that the fact such issue was submitted generally is not prejudicially erroneous. The rule is that an instruction submitting damages in general terms is not erroneous if it is good as far as it goes and does not contain a misstatement or misdirection. If the defendant desired an instruction clarifying, or limiting, plaintiff's damages, it was required to request such additional instruction. Happy v. Kenton, 362 Mo. 1156, 247 S.W.2d 698, 705; Fay v. Missouri Power & Light Co., Mo.App., 33 S.W.2d 1056, 1058; 27 Mo. Digest, Trial, .

Defendant next contends that the court erred in refusing its Instructions 2 and 4. Instruction 2 told the jury that it could allow plaintiff damages only for commissions earned from June 1, 1957 (date of breach), to August 6, 1957, (date of filing petition). What we have said disposes of this contention.

 Instruction 4 advised the jury that if it found that the plaintiff, after moving to Lowry City, made no reasonable effort to sell insurance for the defendant, and that such failure was not the fault of defendant, "then you are instructed that the plaintiff cannot recover for any future damages but can only recover for the damage due him up to this date." If the instruction sought to submit the issue of whether plaintiff voluntarily abandoned the contracts, it was not error to refuse it because that issue was submitted in another instruction. If the instruction sought to limit plaintiff's damages to those due at trial date because he had not sold insurance in Lowry City, then it was not error to refuse it because, it is conceded, the contracts were for plaintiff's life, and he had an expectant income from commissions on policies already written, which we have held he could recover in this suit. The contracts did not require the plaintiff to devote any certain amount of time to selling defendant's policies. He worked on a commission basis, and was paid for the premiums collected, whether they be many or few.

From what we have said, the judgment should be affirmed. It is so ordered.

All concur.