**FREEMAN HEALTH SYSTEM,**
**Respondent,**

v.

**Louis A. WASS, Jr., Appellant.**

**No. 25720.**

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 21, 2004.

---

Kendall R. Vickers, Nevada, for Appellant.

Dwight Douglas, Douglas & Douglas, Neosho, Jean Paul Bradshaw, II & Kurt U. Schaefer, Lathrop & Gage, L.C., Kansas City, for Respondent.

ROBERT S. BARNEY, Presiding Judge.

Appellant Louis A. Wass, Jr., ("Appellant") suffered a serious injury and received medical care in a facility owned by Respondent, Freeman Health System ("Freeman"). Prior to his treatment at Respondent's facility, Appellant signed an admittance form stating that he would be responsible for the costs of his medical care. Freeman seasonably submitted its bill to Appellant for medical goods and services in the amount of $5,073.60. Appellant did not remit any payment. Freeman filed suit against Appellant for the amount owed, a value which it felt was "reasonable and proper" for the goods and services it had provided.

Appellant filed his counterclaim and petition for class action status, alleging that Freeman had violated the Missouri Merchandising Practices Act, section 407.010, et seq., ("the Act").[1] He asserted Freeman charged him a higher amount than the usual and customary charges for such goods and services in the locale, after falsely representing that the stated prices were the usual and customary values for such goods and services. Appellant also sought class action status for himself and other similarly situated uninsured patients, whom he maintains were also unfairly billed by Freeman within the past five years.

The trial court dismissed Appellant's counterclaim and petition for class action status with prejudice, certifying that there was no just reason for delay of the finality of the judgment. *See* Rule 74.04(b), Missouri Court Rules (2003). It found that Appellant had "not paid any part of [the] hospital charges incurred." It also concluded that Appellant had "not purchased merchandise nor suffered an ascertainable loss of money or property as required by R.S.Mo section 407.025.1 in order to bring an action as an individual or as a representative of a class under the [Act]."

Appellant now brings two points on appeal.

In his first point, Appellant argues the trial court erred in dismissing his counterclaim based on its finding that he had not suffered an ascertainable monetary or proprietary loss. Appellant asserts Freeman's act of charging him, and its corresponding attempt to collect on those charges, had caused him to suffer an ascertainable loss of money and property, and put him in jeopardy of having a judgment entered against him with its concomitant risk of adversely affecting his "credit record."

As best we can discern, Appellant's second point argues that despite his inability to prove an ascertainable loss he should, nevertheless, have been allowed to pursue an action for equitable relief under section 407.025, and that the trial court's dismissal precludes him from doing so. We affirm.

"A motion to dismiss is an attack on the petition and is solely a test of the adequacy of that pleading." *Clement v. St. Charles Nissan, Inc.,* 103 S.W.3d 898, 899 (Mo. App.2003). "When reviewing a motion to dismiss, we assume that all of plaintiff's allegations are true and liberally grant plaintiff all reasonable inferences therefrom to determine if any ground for relief is stated." *Id.* "We review the petition 'to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case.'" *Id.* (quoting *Reynolds v. Diamond Foods & Poultry, Inc.,* 79 S.W.3d 907, 909 (Mo. banc 2002)).

Appellant's first point asserts that the trial court erred in granting Freeman's motion to dismiss on his claim under the Act. Section 407.025.1 of the Act states, in pertinent part:

> Any person who *purchases* or leases merchandise primarily for personal, family or household purposes and thereby *suffers an ascertainable loss of money or property,* real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action ... to recover actual damages.[2] (Emphasis added.)

1. Statutory references are to RSMo 2000.

2. Section 407.020 declares the following practices to be unlawful: "[t]he act, use or

employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment,

Appellant argues he should be able to maintain his action against Freeman because he "purchased" unreasonably priced merchandise, the sale of which amounted to an unlawful practice on the part of Freeman.

▮ Medical goods and services meet the statutory definition of merchandise as defined by section 407.010(4).[3] Under the Act, a "private cause of action is given only to one who purchases and suffers damage." *Jackson v. Charlie's Chevrolet, Inc.*, 664 S.W.2d 675, 677 (Mo.App.1984). " 'Purchase' with regard to merchandise, is defined in Webster's ... as meaning 'to obtain by paying money or its equivalent.' " *Id.*

Here, while Appellant willingly accepted goods and services that cannot in any way be returned to Freeman, he, nevertheless, failed to remit any type of payment for that which he received. Nor did Appellant provide Freeman with an equivalent exchange of value. Even assuming *arguendo*, that Appellant was a purchaser in that his promise to pay was the equivalent of providing consideration for Freeman's goods and services, the question remains whether Appellant suffered an ascertainable loss of money or property, a prerequisite to recovery under section 407.025.1. While he acknowledges the Act requires an ascertainable loss in order to proceed with his suit, Appellant argues that he should be able to proceed under the Act because he will suffer a loss in the future if a judgment is entered against him for failure to pay Freeman.

In support of his proposition that he is not required to plead a presently sustained and ascertainable loss, Appellant relies on

*Sunset Pools of St. Louis, Inc. v. Schaefer*, 869 S.W.2d 883 (Mo.App.1994). He argues *Sunset Pools* stands for the proposition that a cause of action under the Act can exist even where the purchase price is paid by debt due the seller, and that the amount of the debt unpaid is irrelevant. We find this to be a misstatement of the holding in that case.

In *Sunset Pools*, the seller of a spa brought suit for payment against the spa's buyer, who had an outstanding balance of $300.00 remaining from the original purchase price of $3,589.36. *Id.* at 884. Buyer filed a counterclaim under section 407.025 alleging unfair merchandising practices in that he was not sold a new spa as contracted; that the one he did receive was three years old and had no manufacturer's warranty; and that it was a display model that had suffered significant damage. *Id.* at 885.

▮ The primary difference between Appellant and the buyer in *Sunset Pools* is that the buyer in *Sunset Pools* made numerous payments on a spa, which was worth significantly less than the value he gave for it, making his loss real and ascertainable. Here, Appellant paid *nothing* for the medical goods and services provided by Freeman. On this basis, it is difficult to discern that he had an ascertainable loss.

Appellant similarly misconstrues the case of *Clement*, 103 S.W.3d 898. In *Clement*, Ms. Clement signed an automobile lease with an auto dealership based on an understanding that it could be terminated at anytime. *Clement*, 103 S.W.3d at 899. However, when Ms. Clement at-

suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose...."

3. Section 407.010(4) defines merchandise as "any objects, wares, goods, commodities, intangibles, real estate or services."

tempted to terminate the lease she discovered she would be assessed a considerable penalty. *Id.* She returned the automobile and brought suit under the Act against the dealership but continued to make her lease payments. *Id.* The Court found that Clement had "adequately pleaded monetary damages in that she had been compelled to continue her lease payments" and that "[w]hether Clement can present evidence to show the amount of her damages is a question of fact to be tested by summary judgment or trial, not by a motion to dismiss." *Id.* at 900. While the *Clement* plaintiff could not put an exact dollar figure on the amount of her damages, it was obvious that she had suffered damage in an amount at least equal to the lease payments she was forced to continue paying after she returned the vehicle, "in order to avoid the consequences of [the auto dealership's] misrepresentation to her." *Id.* In the instant matter, however, Appellant has paid nothing. He cannot therefore reasonably assert that he has been damaged when in fact he is still ahead for the medical goods and services he received and for which he never paid. As previously set out, section 407.025 and supporting case law requires that Appellant have suffered a present, ascertainable loss—a prerequisite that Appellant has not met. *See Jackson,* 664 S.W.2d at 677; *Ziglin v. Players MH, L.P.,* 36 S.W.3d 786, 790 (Mo.App. 2001).

In a final push to prove that he has suffered an ascertainable loss, Appellant asserts that Respondent's attempt "to obtain a judgment against him for an amount in excess of what he would legally owe" has put him at risk "of having a blight on his credit record." Appellant fails to cite any case that provides that the *possibility* of a judgment being entered against a party is the equivalent of suffering an ascertainable loss under the Act.

In any event, we see no cognizable set of circumstances in this situation under which Appellant could suffer an ascertainable loss. As Freeman's brief explains, "a judgment will only be entered against [Appellant] on Freeman's claims after the trial court has determined the reasonable value of the goods and services provided." *See Little Joe's Asphalt, Inc. v. C.W. Luebbert Const. Co.,* 74 S.W.3d 830, 833 (Mo.App. 2002) (*"quantum meruit* is a remedy for the enforcement of a quasi-contractual obligation and is based on a promise implied by the law that a person will pay the reasonable value for services or materials provided at that person's request or with his approval.").

As mandated by our supreme court, we have reviewed Appellant's counterclaim and associated pleadings "to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in [the] case." *Reynolds,* 79 S.W.3d at 909. We find none. Point One is denied.

In his second point, Appellant maintains that even if he cannot plead an ascertainable loss, he should be able to pursue an action for equitable relief under section 407.025.1. He argues he is in "danger of irreparable harm of having a judgment entered against him for an erroneous amount, thus exposing him to post-judgment enforcement actions and placing a black mark on his credit rating." This point has no merit.

We note that section 407.025.1 additionally sets out that:

"The court may, in its discretion, award punitive damages and may award to the *prevailing* party attorney's fees, based on the amount of time reasonably expended, *and may provide such equitable relief as it deems necessary or proper.*" (Emphasis added.)

"The basic rule of statutory construction is to seek the intention of the legislators

and, if possible, to effectuate that intention." *Schimmer v. H.W. Freeman Const. Co.*, 607 S.W.2d 767, 769 (Mo.App.1980). "The legislature is presumed to have intended exactly what it states, and if the language used in the statute is plain and unambiguous, then there is no reason for any construction." *Id.; see also Antle v. Reynolds*, 15 S.W.3d 762, 766 (Mo.App. 2000). We determine from the plain reading of section 407.025 that it provides no *independent* cause of action entitling Appellant to equitable relief in this matter. "Unless a statutory scheme is plainly inadequate under circumstances where a court has a duty to act, there is no need for the court to exercise its equity powers to fashion a 'better' remedy than exists in the statutes." *Cotton v. Wise*, 977 S.W.2d 263, 264 (Mo. banc 1998).

We do not find that the Act's remedial provisions are inadequate given the circumstances of this case. Here, as previously set out, only after a claimant has successfully brought suit for actual damages under section 407.025, may the court consider awarding attorney's fees, punitive damages, and other "equitable relief." § 407.025.1. As we have already determined in Point One, Appellant has suffered no ascertainable loss under the Act, therefore, he is not entitled to any relief, equitable or otherwise, under section 407.025.1. Lastly, if Appellant is fearful of having a judgment imposed upon him for an erroneous amount he still has recourse to this Court. Point II is denied.

The judgment of the trial court is affirmed.

PREWITT, J. and GARRISON, J., concur.